UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL A. THOMAS,

Plaintiff,

v.

**DECISION AND ORDER**
11-CV-1057S

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

1. Plaintiff challenges an Administrative Law Judge's ("ALJ") decision, dated May 24, 2011, wherein the ALJ determined that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act. Plaintiff protectively filed an application for supplemental security income, alleging that he became disabled beginning September 4, 2009. He now contends that the ALJ's determination is not based upon substantial evidence, and reversal is warranted.

2. On May 10, 2011, the ALJ held a hearing at which Plaintiff and a vocational expert testified. After consideration of the evidence, including Plaintiff's medical records, the ALJ denied Plaintiff's application for supplemental security income. On October 19, 2011, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action challenging Defendant's final decision in this Court on December 15, 2011.

3. Defendant filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on May 17, 2012. Plaintiff also moved for such judgment in his favor on the same date. This Court finds the matter fully briefed and oral argument unnecessary. Judgment on the pleadings is appropriate where material facts

are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert denied*, 459 U.S. 1212 (1983).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153

(S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8. Although the claimant has the burden of proof as to the first four steps, the

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since October 19, 2009, the date of his protective application (R. 46);[1] (2) Plaintiff has the following severe impairments: "status-post left and right carpal tunnel release prior to period at issue, very mild right ulnar neuropathy and moderate right carpal tunnel syndrome in December 2009, complaints of bilateral knee pain, below average intelligence and some anti-personality traits" (R. 46); (3) neither these impairments nor any combination of these impairments meets or medically equals a recognized disabling impairment under the regulations (R. 46); (4) Plaintiff retains the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 416.967(b) except he requires an option to sit and or stand" (R. 47-50); and (5) although Plaintiff has no past relevant work, he can perform certain jobs, such as parking lot cashier or counter clerk. (R. 50-51.)

10. Plaintiff first contends that the ALJ failed to apply the appropriate legal standards in evaluating his mental impairments. "In addition to the five-step analysis

[1] Citations to the administrative record will be designated as "R."

outlined in 20 C.F.R. § 404.1520, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). These regulations require the application of a "special technique" that first requires the determination of whether a claimant has a mentally determinable mental impairment. Id. (citing § 404.1520a(b)(1)). As noted, the ALJ identified "below average intelligence and some anti-personality traits" as severe impairments. (R. 46.) Pursuant to 20 C.F.R. § 416.920a(c)(3), the ALJ was required to rate the functional limitations resulting from Plaintiff's mental impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensations.

> [T]he written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 416.920a(e)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified," then the mental impairment is generally not considered severe. Kohler, 546 F.3d at 266; see § 404.1520a(d)(1).

Here, the ALJ determined Plaintiff's "B criteria to be as follows: mild, moderate, mild and never" without further explanation. (R. 46.) Defendant correctly argues that this could be easily interpreted as a reference to paragraph B of 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.04, which sets out the same four functional areas as those listed above in § 416.920a(c)(3). (See Def's Mem of Law in Opp'n at 2.) Thus, although

simplistic, the ALJ's statement is that Plaintiff has mild limitations in daily living; moderate limitations in social functioning; mild limitations in concentration; and no episodes of decompensation. Yet it is unclear from the decision which impairments the ALJ is discussing. His conclusion that "some anti-personality traits" constitute a severe impairment appears to reflect the finding in one consultative psychiatric evaluation that Plaintiff suffers from anxiety-related disorders and has moderate difficulties in maintaining social functioning. (R. 46, 274, 276.) A separate consultative psychiatric evaluation found, however, that Plaintiff's "manner of relating and social skills were adequate." (R. 257.) There is no discussion in the decision of the apparent conflict between these conclusory opinions, nor any reference to Plaintiff's own testimony that "I never had a problem working with my attitude. I never – never had any problem at a workplace as far as any subordinations, fires, you're reprimanded because you got disorderly, no." (R. 21.)

Moreover, neither Plaintiff's social anxiety nor his purported below average intelligence was clearly included in either hypothetical presented to the vocational expert. (R. 30-37.) Instead, the ALJ stated that the hypothetical individual could "frequently interact with the public" and "can occasionally understand, remember, and carry out complex and detailed tasks." (R. 32.) This appears to be a reference to the findings in the consultative psychiatric evaluations that Plaintiff had mild to moderate limitations with respect to memory and concentration that were "due partly to nervousness and partly to lack of practice and concentration." (R. 258, 276, 278, 280.) There was no finding of a severe impairment with respect to memory or concentration, and as such it is unclear from the decision if this hypothetical was supposed to reflect any unstated conclusions regarding Plaintiff's low intelligence. Accordingly, this Court cannot conclude that the ALJ's failure

to fully "document application of the technique" as required by 20 C.F.R. § 416.920a(e) is merely procedural or harmless. See Kohler, 546 F.3d at 269 (leaving open the possibility that this type of error could be found harmless).

11. Plaintiff further argues that the ALJ's RFC assessment failed to adequately specify the frequency with which Plaintiff would need to alternate between sitting or standing. (Pl's Mem of Law at 11.) As noted, the ALJ determined that Plaintiff had the "residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he requires an option to sit and or stand." (R. 47.) "Because the need to alternate between sitting and standing could decrease the jobs that a claimant could perform, '[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.' " Kouadio v. Astrue, No. 08-CV-881A, 2010 WL 4922672, *6 (W.D.N.Y. Dec. 2, 2010) (quoting S.S.R. 96-9p, 1996 WL 374185 (S.S.A. July 2, 1996)). Here, in presenting the hypothetical to the vocational expert, the ALJ asserted that Plaintiff "should have the ability to sit/stand as an option." (R. 32.) The vocational expert specifically excluded the job of light cleaner because that position did not allow for a sit-stand option. (R. 35.) The hypothetical was therefore based on Plaintiff's ability to change position *at-will*, and where an ALJ's finding and hypothetical are consistent with an at-will sit-stand option, no greater specificity is required. Miller v. Astrue, No. 11-CV-4103, 2013 WL 789232, *10 (E.D.N.Y. Mar. 1, 2013) (requirement that claimant have "option to sit-stand throughout the day" sufficient statement of frequency); Evans v. Astrue, No. 12-CV-6002, 2012 WL 6204219, *8 (W.D.N.Y. Dec. 12, 2012) (citing Thompson v. Astrue, 442 Fed. Appx. 804, 807 (4th Cir. 2011)) (requirement that claimant be able to "sit or stand alternatively" sufficient statement of frequency).

12. Plaintiff next argues that the ALJ did not apply the correct legal standards in evaluating his credibility. Credibility determinations are generally reserved to the Commissioner, not the reviewing court. Selian v. Astrue, – F.3d –, 2013 WL 627702, *10 (2d Cir. 2013); Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984). After consideration of the decision as a whole, this Court concludes that the ALJ set forth the essential findings upon which his credibility decision was based, and with sufficient particularity to allow review. See Leavitt v. Astrue, No. 08-CV-731S, 2010 WL 419970, *4 (W.D.N.Y. Jan. 29, 2010) (citing Mongeur v. Heckler, 722 F.3d 1033, 1040 (2d Cir. 1983)) (where record permits determination of the ALJ's rationale, specific mention of every item considered is not required).

In determining that Plaintiff was not disabled, the ALJ found that Plaintiff testified inconsistently with the record. Specifically, the ALJ noted that Plaintiff's assertion that his medication resulted in a "real bad sleep disorder," including sleeping full days, was a side effect that would reasonably have been reported to his treating physicians. (R. 23, 50.) The ALJ relied on the absence of reported side effects of this severity in the medical records, and Plaintiff does not point to any evidence supporting his hearing testimony on this issue. Indeed, the record reflects that a treating physician questioned the relationship between Plaintiff's alleged drowsiness and his medication, inasmuch as the physician discussed with Plaintiff his "ongoing use of marijuana especially with complaints of sedation and somnolence during the day." (R. 218.)

Next, the ALJ did not ignore the objective findings of Plaintiff's hand limitations when assessing his credibility. The ALJ did not deny that Plaintiff had hand pain and weakness, and in fact specifically found that he should avoid handling sharp objects on this basis. (R.

63.) The ALJ properly considered the statements of the treating neurologist, who found that strength testing in Plaintiff's was "very limited due to pain, and what also appeared to be a lack of effort." (R. 50, 254.) The neurologist further stated that, when examined, Plaintiff had a weakness in grip strength, extension, and flexion of his fingers, but was later observed "actually flex[ing] his finger quite well and was able to put quite a significant amount of pressure with both hands, with flexed fingers, while scratching both of his forearms." (R. 254.) Similarly, the consultative physician determined after examination that Plaintiff's hand and finger dexterity were intact, with "[g]rip strength 5/5 in particular bilaterally." (R. 64, 263.) Thus, the record supports that ALJ's decision not to fully credit Plaintiff's testimony regarding the debilitating effect of his hand pain.

In so concluding, however, this Court notes that while the record permits a determination of the ALJ's rationale on review, Mongeur, 722 F.3d at 1040, there is very little explanation as to the specific evidence on which the severe impairment and non-exertional limitation determinations were based. Inasmuch as remand is already warranted, these issues should also be more fully discussed in any new decision.

13. In light of the lack of clarity in the ALJ's decision, further comment on Plaintiff's last argument that the vocational expert's testimony was based on a faulty RFC assessment would be premature.

14. For the foregoing reasons, the Court cannot conclude that the ALJ's determination is supported by substantial evidence. Plaintiff's Motion for Judgment on the Pleadings is granted, and Defendant's motion is denied.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED;

FURTHER, that the decision of the ALJ is REVERSED and this matter is REMANDED to the Commissioner of Social Security for further proceedings consistent with the above decision;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: March 28, 2013
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court